HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RONELLE R. FIGUEROA,<br><br>             Plaintiff,<br><br>   v.<br><br>CITY OF TUKWILA, et al.,<br><br>             Defendants. | CASE NO. C11-1496 RAJ<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the court on a renewed motion for summary judgment by defendants City of Tukwila ("City"), William Devlin, and Jason Wollan. Dkt. # 16. *Pro se* plaintiff alleges a single cause of action under 42 U.S.C. § 1983 for use of excessive force in violation of the Fourth and Fourteenth Amendments.[1] Dkt. # 1 at 9 ¶¶ 5-5.8. Defendants argue that they are entitled to qualified immunity. In the court's October 9, 2012 order denying defendants' initial motion for summary judgment, the court warned plaintiff that she must present evidence in opposition to any renewed motion for summary judgment. Dkt. # 15. Here, plaintiff filed an untimely opposition on

---

[1] "All claims that law enforcement officers have used excessive force – deadly or otherwise – in the course of an arrest must be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Smith v. Hemet*, 394 F.3d 689, 700 (9th Cir. 2005).

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' RENEWED MOTION FOR SUMMARY
JUDGMENT- 1

November 26, 2012. Dkt. # 20. Although untimely, in the interests of justice, the court has considered plaintiff's opposition and the evidence she submits.[2] Similarly, the court has considered defendants' reply.

## II. BACKGROUND[3]

On June 16, 2009, plaintiff was looking for a restroom near a Mexican food vendor when she was approached by two Tukwila Police Officers. Dkt. # 20-1 at 3. One of the officers told Figueroa, "You're going to have to come with us. What is your name?" *Id.* Figueroa knew she had missed a court date for her probation, and she was frightened, so she gave the officer a false name. *Id.* The officer told Figueroa that the purple thongs (footwear) she was wearing and the water bottle she had with her had been stolen from Victoria's Secret Pink in the mall some days prior. *Id.* Plaintiff told the officers that she had received the thongs as a gift, but the officers began physically escorting her to the store. *Id.* Figueroa explained that she had made an exchange at the store in the last two weeks but did not steal the thongs or the water bottle. *Id.* One of the officers told her, "I don't like your attitude. Shut your fucking mouth." *Id.*

Ms. Auge, a witness, remembers that Figueroa was in handcuffs when the officers brought her to the store for identification. *Id.* at 7. After employees identified plaintiff as

---

[2] The court notes that plaintiff refers to various photographs of her injuries as attached, but there are no photographs attached. The court has before it an unsigned investigation report from Officer Theresa Schuknecht of Yakima County Department of Corrections, a witness interview summary of Sharlene Auge, the declaration of Jay Yager, and the declarations of Officers Devlin and Wollan. The court focuses on the admissibility of the evidence's content, not on the evidence's form. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Presumably, plaintiff will testify at trial and she could attempt to subpoena Officer Schuknecht (and other witnesses mentioned in the report) and Ms. Auge pursuant to Fed. R. Civ. P. 45 to provide testimony at trial to the court with respect to matters within their personal knowledge as described in the investigation report and witness report. Accordingly, the court denies defendants' request to strike these materials.

[3] There are a number of material facts in dispute. The court has summarized the facts in the light most favorable to plaintiff.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' RENEWED MOTION FOR SUMMARY
JUDGMENT- 2

the individual who stole the items, the officers escorted her to the manager's office in the store. Dkt. # 17 (Devlin Decl.) ¶¶ 9, 11; Dkt. # 18 (Wollan Decl.) ¶ 9. Officer Devlin believed that plaintiff was under the influence of methamphetamine because she was sweating profusely, constantly shifting, talking very fast, and not making any sense. Dkt. # 17 (Devlin Decl.) ¶ 10.

Mr. Yager called plaintiff's phone and a man answered asking "who the (expletive) he was." Dkt. # 20-1 at 9 (Yager Decl.). The officer identified himself as a Tukwila police officer, refused to give his name, and demanded that Mr. Yager tell him the name of his girlfriend. *Id.* Mr. Yager told the officer her name, and he could hear her screaming for help in the background, "I can't breathe, help me, help me." *Id.* Mr. Yager informed the officer that she suffered from bi-polar disorder and severe asthma and that she suffered from panic attacks. *Id.* The officer hung up, and Mr. Yager tried to call back numerous times with no answer. *Id.* Officer Devlin confirms that he answered the phone. Dkt. # 17 (Devlin Decl.) ¶ 13. After the officers ran plaintiff's true identity and discovered the outstanding warrants,[4] they escorted plaintiff to the security office so she could be trespassed from the mall. Dkt. # 17 (Devlin Decl.) ¶¶ 14-15; Dkt. # 18 (Devlin Decl.) ¶¶ 14-15.

At some point, Figueroa was having trouble breathing and her vision was becoming hazy. Dkt. # 20-1 at 4. She stood up, lunged toward a wall, and attempted to steady herself on a door or wall. *Id.* The officers grabbed hold of her and threw her to the ground. *Id.* She hit the cement floor on her stomach, with the left side of her face touching the cement floor in the hallway outside of the small office she had been in. *Id.* She felt a boot or heavy shoe on the right side of her head. *Id.* Both officers were bent over her and hit and punched her in the head and face between one and five times and

---

[4] Plaintiff had outstanding no bail warrants with the Tukwila Police Department for theft in the third degree, criminal trespass, and making false statements, and additional misdemeanor warrants with other agencies. Dkt. # 17 (Devlin Decl.) ¶ 14; Dkt. # 18 (Wollan Decl.) ¶ 14.

grabbed both of her arms. *Id.* Figueroa kept telling the officers to get off and that she could not breathe. *Id.* She was pepper sprayed and drive stunned with a taser.[5] *Id.* Figueroa claims she sustained numerous injuries as a result of this incident including bruising under and around both eyes, blood in the white of the right eye, abrasion and bruising on the right side of her head, and bruises on her upper arms. *Id.* at 4-5.

### III. ANALYSIS

**A. Legal Standard**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.

---

[5] The officers claim that Figueroa had slipped out of her handcuffs and they used the pepper spray and taser to gain compliance and to place her in handcuffs because she was resisting. Dkt. # 17 (Devlin Decl.) ¶¶ 16, 20-21; Dkt. # 18 (Wollan Decl.) ¶¶ 19-21. Figueroa does not dispute that the officers re-handcuffed her. Dkt. # 20-1 at 4. However, plaintiff's version, that she was on her stomach with a heavy shoe on the right side of her head holding her down to the ground is inconsistent with the officers' account that she was rolling from side to side and resisting.

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000). Additionally, summary judgment should be granted sparingly in excessive force cases because the excessive force inquiry often requires a jury to sift through disputed factual contentions and make a credibility finding. *Smith*, 394 F.3d at 701.

**B. Municipal Liability**

The City argues that it is entitled to summary judgment because plaintiff has failed to produce any evidence of a municipal policy. Dkt. # 16 at 5. Although there are facts indicating that officers at the Regional Justice Center Detention Facility of King County ("RJC") used a booking photograph taken from a previous arrest, rather than a current photograph, RJC is not a named defendant and no policy has been identified. Dkt. # 20-1 at 6. The court agrees with the City, and finds that plaintiff has failed to set forth any facts that would allow imposition of liability on the City. *See Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010) (municipality may be liable under section 1983 when official policies or established customs inflict constitutional injury, when omissions amount to municipality's policy, or when individual who committed constitutional injury was an official with final policy-making authority or ratified a subordinate's unconstitutional decision).

**C. Qualified Immunity**

The "doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "The purpose of qualified immunity is to strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Id.* Whether the officials are entitled to qualified immunity depends on (1) whether the facts that the plaintiffs have alleged or

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' RENEWED MOTION FOR SUMMARY
JUDGMENT- 5

shown make out a constitutional violation and, (2) if so, whether the constitutional right at issue was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).[6]

1. Constitutional Violation

A Fourth Amendment excessive use of force claim is analyzed under the framework outlined in *Graham v. Connor*, 490 U.S. 386 (1989). *Smith*, 394 F.3d at 700. The court must determine whether the force used was objectively reasonable under the circumstances by balancing the nature and quality of intrusion on a person's liberty with the countervailing governmental interests at stake. *Id.* at 701.

First, the court must assess the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted. *Id.* By Figueroa's account, two officers threw her to the ground, stepped on the right side of her head with a boot or heavy shoe holding her down, hit and punched her in the head and face between one and five times, pepper sprayed her, and tased her. There is no evidence that plaintiff had any visible injuries prior to being taken to the security office, but she had visible bruises and abrasions on her face, head and arms once in custody. Additionally, although photographs were not taken until June 30, 2009 due to the alleged refusal of RJC officers, the visible injuries as described by Officer Schuknecht are consistent with plaintiff's description of the events.[7] The court finds that the force used against plaintiff was severe.[8]

---

[6] The Supreme Court modified *Saucier* in *Pearson*, 555 U.S. at 236. Under *Pearson*, the decisional sequence is no longer mandatory.

[7] Plaintiff's daughter visited her on June 23, 2009 at the RJC "and was shocked to see how severely she was injured." Dkt. # 20-1 at 4. The court believes that plaintiff's daughter would likely be available to testify at trial about her observations of plaintiff's visible injuries.

[8] The Ninth Circuit has noted that the use of pepper spray is an intermediate level of force and severe. *Smith*, 394 F.3d at 701. Although the Ninth Circuit has declined to determine what level of force is used when a taser is deployed in drive-stun mode (*Mattos*, 661 F.3d at 443), the court notes that the drive-stun, when combined with the pepper spray and strike(s) to the face, could qualify as severe. Regardless, the court need not decide whether a taser in drive-stun mode

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' RENEWED MOTION FOR SUMMARY
JUDGMENT- 6

Second, the court assesses the importance of the government interests at stake by evaluating the *Graham* factors: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Smith*, 394 F.3d at 702.

With respect to the first factor, the officers detained her for allegedly shoplifting from a store in the mall, a non-violent crime of low severity. Plaintiff also had outstanding no bail warrants for theft in the third degree, criminal trespass, and making false statements, and additional misdemeanor warrants with other agencies. However, the significance of these outstanding warrants for misdemeanor, non-violent crimes are of limited significance. *See Chew v. Gates*, 27 F.3d 1432, 1442 (9th Cir. 1994) (noting that existence of three felony warrants for undetermined crimes for which suspect had not been tried or convicted, is not strong justification for the use of dangerous force). This factor slightly favors the government.

With respect to the second and most important factor, neither officer has indicated that plaintiff posed an immediate threat to their safety. There is no evidence that she was armed or that she verbally threatened the officers. Indeed, if plaintiff's account is credited as true, the record does not reveal any basis to believe that plaintiff posed an immediate threat to anyone's safety. This factor weighs in favor of plaintiff.

With respect to the third factor, according to plaintiff's account, she was not fleeing or attempting to evade arrest. Rather, she stood up and lunged toward the wall, attempting to steady herself on a door or wall, because she was having trouble breathing and her vision was becoming hazy. There is no evidence that the officers ordered her to put her hands behind her back or warned her that they would use physical force, pepper

---

is severe to assess the reasonableness of the tasing. *Mattos*, 661 F.3d at 443. The court will determine whether the use of the taser gun was reasonable, keeping in mind the likely magnitude of electric shock at issue and the extreme pain that plaintiff likely experienced. *Id.*

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' RENEWED MOTION FOR SUMMARY
JUDGMENT- 7

spray or a taser gun if she did not comply with their demands.[9]  This factor favors plaintiff.

Considering the severity of the force used and the three *Graham* factors when viewing the evidence in the light most favorable to plaintiff, the court finds that a reasonable jury could find that the officers' use of force was objectively unreasonable. Accordingly, plaintiff has made out a constitutional violation.

2. <u>Clearly Established</u>

No federal case directly on point is needed to establish that the conduct at issue violated clearly established law. *Drummond v. City of Anaheim*, 343 F.3d 1052, 1052 (9th Cir. 2003). The salient question is whether at the time of the encounter, the state of the law gave defendants fair warning that their alleged treatment of plaintiff was unconstitutional. *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007). At the time of the events here in June 2009, the law regarding tasers was not sufficiently clearly established to warrant denying officers qualified immunity. *See Mattos*, 661 F.3d at 447-48; *Bryan v. MacPherson*, 630 F.3d 805, 832-33 (9th Cir. 2010); *see also Brown v. City of Golden Valley*, 574 F.3d 491, 498 n.5 (8th Cir. 2009) ("The Taser is a relatively new implement of force, and case law related to the Taser is developing."); *Baird v. Ehlers*, Case No. 10-1540JLR, 2011 WL 5838431, *11 (W.D. Wash. 2011) ("Given the lack of clarity in the case authority prior to the Ninth Circuit's ruling in *Bryan* and *Mattos*, the court declines to find that a per se proscription against taser use in situations like the one at hand was clearly established as of November 23, 2009). *Contrast Thomas v. Plummer*, 2012 WL 2897007, *9 (6th Cir. 2012) (unpub.) ("Every reasonable officer would have understood that tasing a suspect [who surrendered by falling to her knees and placing her hands above her head] was excessive in August 2009"). Accordingly, the

---

[9] An additional factor the court may consider in the *Graham* analysis is the availability of alternate methods of capturing or subduing a suspect. *Smith*, 394 F.3d at 703.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' RENEWED MOTION FOR SUMMARY
JUDGMENT- 8

officers are entitled to qualified immunity with respect to the taser.  However with respect to the pepper spray and strikes to the face, the court "need look no further than *Graham*'s holding that force is only justified when there is a need for force." *Blankenhorn*, 485 F.3d at 481.  This clear principle would have put a prudent officer on notice that two officers tackling, using pepper spray, and punching plaintiff in the face, without first attempting a less violent means of arresting plaintiff who was not, by her account, attempting to flee, was a violation of that person's Fourth Amendment rights. *See id.*; *LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000) (holding that any reasonable officer would know that use of pepper spray in a situation where an arrestee surrenders and is rendered helpless constitutes excessive force).

Accordingly, Officers Devlin and Wollan are not entitled to qualified immunity on summary judgment.

## IV. CONCLUSION

For all the foregoing reasons, the court GRANTS the motion for summary judgment with respect to the City, and DENIES the motion with respect to the individual officers.  The Clerk is DIRECTED to schedule trial and pre-trial deadlines.  The Clerk is also DIRECTED to mail a copy of the following to plaintiff:  (1) *Pro se* guide (http://www.wawd.uscourts.gov/sites/wawd/files/ProSeManual7-1-2012.pdf), (2) Order Regarding Civil Trial Procedures and Procedures for Handling Exhibits[10] (available at http://www.wawd.uscourts.gov/judges/jones-procedures), and (3) the form Subpoena to Appear and Testify at a Hearing or Trial in a Civil Action (available at http://www.wawd.uscourts.gov/court-forms).  The court also recommends that plaintiff review the Federal Rules of Evidence, which is available electronically at http://www.law.cornell.edu/rules/fre.

---

[10] Since no jury demand was made, the case will proceed as a bench trial.

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' RENEWED MOTION FOR SUMMARY
JUDGMENT- 9

1   Dated this 5th day of December, 2012.

                                          _____
                                          The Honorable Richard A. Jones
                                          United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' RENEWED MOTION FOR SUMMARY
JUDGMENT- 10